1999 ME 194

**Raymond M. ELLERY**

v.

**DEPARTMENT OF LABOR UNEMPLOYMENT INSURANCE COMMISSION and Parker Hannifin Corporation.**

Supreme Judicial Court of Maine.

Argued Dec. 6, 1999.

Decided Dec. 23, 1999.

**930**

James L. Audiffred, (orally), Saco, for plaintiff.

Andrew Ketterer, Attorney General, Elizabeth J. Wyman, Asst. Attorney General, (orally), Gendolyn D. Thomas, Asst. Attorney General, Augusta, Alison A. Denham, (orally), Douglas, Denham, Rogers & Hood, Portland, (for Parker Hannifin), for defendants.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] The Unemployment Insurance Commission and Parker Hannifin Corporation (employer) appeal from a judgment entered in the Superior Court (York County, *Perkins, A.R.J.*) vacating the Commission's decision that Raymond Ellery was discharged for misconduct and, therefore, ineligible for unemployment benefits. The Commission and employer assert that competent evidence supported the Commission's finding and that the Commission properly applied the applicable law. We agree and vacate the judgment of the Superior Court.

## I. FACTS

[¶ 2] Parker Hannifin, a manufacturer of pump parts, employed Raymond Ellery from November 1987 to May 12, 1997, as a "first class press operator." In 1994, Ellery complained of pain in his arms and legs. After Ellery reported his injuries to his employer, his supervisor assigned him to light duty that included a modification of his regular work and some work as an engineering technician.

[¶ 3] Ellery was examined by the employer's physical therapist in March 1995. The therapist determined that Ellery was improving and designed a plan to transition Ellery from physical therapy to a work-hardening program that would increase his endurance and ability to perform his job. Eleven months passed before Ellery began his first work-hardening program. In the interim, he worked as a tool kitter, preparing paperwork for the presses.

[¶ 4] Ellery participated in the first work-hardening program for four months. He then notified his supervisors that the pain in his arms and legs was increasing. Ellery's supervisors ended the first work-hardening program. Ellery was then examined by his doctor. The doctor restricted Ellery's repetitive work with his left hand and wrist to no more than thirty minutes per hour. Stacy Doyon, a physical therapist, performed a work site evaluation before Ellery began the second work-hardening program.

[¶ 5] Doyon evaluated the machines that Ellery used in both his light duty job and his regular job and she also evaluated Ellery operating the machines. Doyon provided specific ways for Ellery to decrease the muscle strain on his hand and wrist by altering his hand positions as he performed his job. She also recommended that Ellery make slow controlled motions when operating the machines instead of his habitual "quick, jerky motions." She recognized that the majority of her recommendations required Ellery to change his habits. Doyon concluded that Ellery would be able to return to "his regular job as long as he continues to monitor himself." She advised a gradual return to his regular job, four hours the first week and then two additional hours for the next two weeks. Ellery began the second work-hardening program sometime in October 1996, but this effort only lasted for one to two months.

[¶ 6] When Ellery was off the presses, he assisted an engineer during a company audit. Ellery hoped to become a Tool Engineer for his employer. He had been taking classes for an associate's degree in technical graphics and design technology and applied for a position posted within the company, but he was not qualified for the position. The employer asked Ellery to return to his regular job when the audit was complete, but Ellery warned that if he did, his arms would hurt.

[¶ 7] After being back at his regular job for only a week, Ellery complained that his pain was worsening; he went to a doctor who proscribed Ellery's use of the presses. Based upon the March 4, 1997 doctor's note, the employer ended the second program and sent Ellery back to tool kitting. The employer disagreed with the doctor's diagnosis because the employer thought that the doctor had relied on inaccurate information provided by Ellery.

[¶ 8] The employer organized a team meeting to address Ellery's problem. The meeting included Ellery, his physician, physical therapist, his supervisor, manager, general manager and human resources specialist. They met on April 24, 1997, and determined that Ellery would gradually return to the presses in accordance with Doyon's October 1996 work-hardening program. The team modified the 1996 program to make it easier for Ellery to follow. The employer stated that if Ellery needed to ice his arm, he could do so whenever necessary and suggested that Ellery receive therapy for his stress. Ellery refused the counselling. Doyon agreed to reevaluate the work site before the third work-hardening program began and did so on May 9, 1997.

[¶ 9] After Doyon reevaluated the facilities, she, Ellery, his supervisor, manager, and human resources specialist finalized the third work-hardening program and

agreed to begin the program on May 12, 1997. The program was extended from six to eleven weeks and Ellery and his supervisors scheduled weekly progress meetings. The employer also relieved Ellery of his duty to scoop powder.

[¶ 10] On May 12, 1997, the work-hardening program was to begin. Ellery's manager arrived early to ensure that the program went smoothly. Ellery, however, approached his manager and told him that he refused to participate in the work-hardening program. Ellery tried to rely on his March 4th doctor's note that stated "no use of the presses." Ellery stated "I plan to clean out my toolbox today—I'm taking my tools home so you guys can't put me on a press. You guys can either find me a job that I can do or pay me worker's compensation." His manager confirmed that Ellery was refusing the program and asked him to go home so that the manager could sort out the issue. The manager helped him clean out his tools and carried them to his car for him.

[¶ 11] Later that morning, two managers and the human resources specialist called Ellery at home. They asked him if he was unwilling to attempt the work-hardening program and he said, "For the second time, yes, I'm not going to do it." They told Ellery that his employment would be terminated and that they considered his refusal to participate in the program a resignation.

[¶ 12] Ellery applied for unemployment compensation. The employer objected on the grounds that Ellery voluntarily terminated the employment relationship. The unemployment deputy officer found that Ellery did voluntarily leave. Ellery appealed to an administrative hearing officer, who held a hearing and determined that Ellery was ineligible for unemployment benefits pursuant to 26 M.R.S.A. § 1193(2)[1] because his employer dis-

1. Section 1193(2) reads:
2. Discharge for misconduct. For the week in which he has been discharged for

misconduct connected with his work, if so found by the deputy, and disqualification shall continue until claimant has earned 4

charged him for misconduct.[2] Ellery then appealed to the Unemployment Insurance Commission. The Commission relied upon the transcript of the hearing before the administrative hearing officer and affirmed his decision. Ellery petitioned for reconsideration, but the Commission denied that request. He next appealed to the Superior Court and the court vacated the Commission's decision. The court found that the record did not support the Commission's findings. This appeal followed.

## II. STANDARD OF REVIEW

[¶ 13] When examining the Superior Court's review of an Unemployment Insurance Commission decision, we directly review the Commission's decision to determine whether "there exists any competent evidence to support the [Commission's] findings and then ascertain whether upon those findings the applicable law has been correctly applied." *See Lewiston Daily Sun v. Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344, 346 (internal citations omitted). We do not accord special deference to the Superior Court on such matters. *See Macaro v. Town of Windham*, 468 A.2d 604, 605 (Me. 1983). We will not overrule the Commission's findings of fact if the findings are supported by substantial evidence. *See Lewiston Daily Sun*, ¶ 7, 733 A.2d at 346. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion." *Id.* We refrain from assessing credibility because credibil-

ity is within the province of the fact finder. *See Nisson v. Maine Employment Sec. Comm'n*, 455 A.2d 945, 949 (Me.1983).

[¶ 14] The unemployment benefits statute states that an employee is disqualified from receiving unemployment benefits if he was discharged for misconduct. *See* 26 M.R.S.A. § 1193(2) (1988 & Supp.1999). The relevant statute defines misconduct as conduct demonstrating "an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer." 26 M.R.S.A. § 1043(23) (1988). A two-step analysis is required to determine misconduct: "(1) the employer must have a reasonable standard for discharge and (2) the employee must have acted unreasonably in failing to meet that standard." *Forbes–Lilley v. Maine Unemployment Ins. Comm'n*, 643 A.2d 377, 379 (Me.1994).

## III. REASONABLENESS OF EMPLOYER'S EXPECTATION

[¶ 15] The law requires that the employer's standard or expectation be reasonable. *See id.* The evidence on the record supports the Commission's finding that the employer had a reasonable expectation that Ellery would participate in the work-hardening program. *See Thompson v. Maine Unemployment Ins. Comm'n*, 490 A.2d 219, 222 (Me.1985) (discussing reasonable expectation of employer). The employer made a concerted effort to address Ellery's physical ailments. The employer ceased Ellery's first work-harden-

times his weekly benefit amount in employment by an employer.
    A. For the duration of any period for which he has been suspended from his work by his employer as discipline for misconduct, if so found by the deputy, or until the claimant has earned 4 times his weekly benefit amount in employment by an employer.
26 M.R.S.A. § 1193 (1988 & Supp.1999).

2. The statute defining misconduct, which was in effect when the hearing officer decided Ellery's case, states in relevant part:

23. Misconduct. "Misconduct" means conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
26 M.R.S.A. § 1043(23) (1988).

ing program when he complained of pain. The employer then allowed a physical therapist to evaluate its work place and complied with the therapist's request that Ellery gradually return to his job. It also placed Ellery in a tool kitter job for almost eleven months. When Ellery was unable to complete the second work-hardening program after being returned to his regular job, the employer conducted a meeting with Ellery's doctor, physical therapist, and all of Ellery's supervisors. The employer offered counselling and had its work place re-evaluated for the third work-hardening program. It extended the work-hardening program from six to eleven weeks; told Ellery that he could ice his arms whenever necessary; and relieved Ellery of his obligation to scoop powder. Ellery agreed to the third work-hardening.

[¶ 16] Ellery asserts that the employer was unreasonable because the employer did not install handles on some cabinet drawers; grease the wheels of those cabinets; and provide a spatula or an ergonomic scoop. Although these accommodations may have eased Ellery's working conditions, they were not necessary for Ellery to perform the work-hardening program. The physical therapist stated in her evaluation that the majority of Ellery's injuries could be cured by Ellery changing and monitoring his hand positions. The foregoing evidence substantially supports the Commission's finding that the employer had a reasonable expectation that Ellery would participate in the third work-hardening program.

## IV. UNREASONABLENESS OF ELLERY'S CONDUCT

[¶ 17] The Commission must determine Ellery's unreasonableness upon an objective manifestation of intent evidenced by the circumstances of the case. *See Forbes–Lilley,* 643 A.2d at 379; *Thompson,* 490 A.2d at 222. We will not vacate the Commission's finding of unreasonableness if "the Commission could have justifiably determined that the employee's conduct was of a type, degree, or frequency that was so violative of the employer's interests that it may reasonably be deemed tantamount to an intentional disregard of those interests." *Forbes–Lilley,* 643 A.2d at 379. Here, the evidence before the Commission justified the conclusion that Ellery intentionally disregarded his employer's interests. *See id.* Ellery's refusal to participate in the work-hardening program constituted an intentional disregard of the employer's interests because Ellery refused to make an effort to perform the job he was hired to do. *See* 26 M.R.S.A. § 1043(23).

[¶ 18] In conclusion, the evidence before the Commission substantially supported its finding that Ellery was not entitled to unemployment benefits because he was discharged for misconduct.

The entry is:

Judgment vacated. Remand for entry of a judgment affirming the decision of the Unemployment Insurance Commission.