STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-12-07
MCAK AND - 12/4/2012

MARK VASILIAUSKAS,
    Petitioner

v.

ORDER ON
80C PETITION

RECEIVED & FILED

DEC 04 2012

ANDROSCOGGIN
SUPERIOR COURT

MAINE UNEMPLOYMENT
INSURANCE COMMISSION
    Respondent

Before the Court is claimant Mark Vasiliauskas's 80C appeal of a decision of the Maine Unemployment Insurance Commission that denied his request for unemployment benefits.

**Background**

Claimant Mark Vasiliauskas was employed as a service clerk for Sam's Italian Foods for over twelve years ending with his termination on November 10, 2011. (R. 49.) Sam's is in the chain restaurant business and operates at twelve locations throughout the state. (R. 41, 63.) Claimant's duties at Sam's included food preparation and customer service. (R. 44-46.)

Sam's president Rick Michaud has testified that in the chain business it is important for food preparation to be consistent in order to meet customer expectations and control costs. (R. 41-42, 63.) Claimant was known for being passionate about customer service to the extent that he often disregarded company specifications in order to prepare what he thought to be a superior product. (R. 181, 185.) This was the basis for his eventual termination.

The history of Claimant's employment problems is well documented. In an incident report from December 9, 2010, Michaud detailed a conversation he had with Claimant about his habit of modifying company recipes in order to "take care of his customers," and his tendency to address his superiors in a belligerent fashion. (R. 185.)

1

Specifically, Claimant was told that he needed to comply with company standards when making salads, chicken salad, and other products, and that his aggressive attitude would no longer be tolerated. *Id.*

On November 9, 2011, manager Dan Poulin conducted a formal employee evaluation of Claimant's work performance. (R. 180-182.) Poulin noted the Claimant's "loyalty, dedication, pride, and passion in his work," but cited those same traits as "the focus point for his stubbornness as well." *Id.* The evaluation explained that management had approached Claimant on several occasions about his failure to make certain recipes according to company specifications and his tendency to "over prep" (i.e., prepare salads and meat products too far in advance so that their freshness is compromised.) *Id.* The evaluation explained that his conduct constituted insubordination and would no longer be tolerated. *Id.*

The same day, Claimant met with Michaud and Poulin to discuss the evaluation. (R. 183.) Claimant was told that company specifications required that he use tomato end slices on sandwiches, and he indicated that he would not do so. *Id.* An incident report from that day explains that Claimant then left the room, returned with a tomato end piece in hand, and slammed it down on the table and said that he refused to use tomato end pieces. *Id.* Claimant was told that his behavior was unacceptable, but his employer did not immediately terminate his employment. (R. 59, 183.)

The next morning, on November 10, 2011, Claimant arrived at work and started making certain requests to management personnel who were on the premises, including Michaud and Poulin. (R. 184.) In an "irritated and confrontational manner," he demanded to know what his job description was, what certain product specifications were, and asked for copies of his evaluations. *Id.* Claimant left to wait on a customer, and was heard saying he was sorry the sandwich was so small, but he was bound by company specifications. *Id.* At this point, Michaud called the Claimant to the back of the kitchen and terminated his employment. *Id.*

The Claimant applied for unemployment benefits, which were denied in a deputy decision concluding that he was disqualified under 26 M.R.S.A. § 1193(2) because his

termination was for misconduct.[1] (R. 178.) Claimant appealed to the Division of Administrative hearings, and a de novo hearing took place on January 17, 2012. (R. 31, 176.) On January 26, the Hearing Officer affirmed the deputy decision on the same grounds. (R. 14-19.) The Claimant subsequently appealed to the Maine Unemployment Insurance Commission, alleging that Michaud had lied at the hearing and no misconduct had occurred. (R. 13.) On April 25, 2012, the Commission issued a decision that affirmed the Hearing Officer's decision and adopted her findings, pursuant to 26 M.R.S.A. § 1194(5). (R. 8-9.) Claimant requested reconsideration, and the Commission denied the request in a decision dated June 4, 2012. (R. 1-2.) Claimant subsequently appealed to this Court pursuant to Maine Rule of Civil Procedure 80C. Claimant argues that the Commission's decision was made in error of law and is unsupported by substantial evidence in the record. (Pet. Br. 4.)

**Standard of review**

In its appellate capacity, the Superior Court reviews agency decisions for "abuse of discretion, error of law, or findings not supported by the evidence." *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223. The burden of proof is on the petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995). "Inconsistent evidence will not render an agency decision unsupported." *Id.* "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982). Rather, the court will defer to administrative conclusions when based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*

---

[1] To the extent Claimant complains that the deputy decision is flawed because during his telephone interview he had hearing problems, any error is harmless because the Hearing Officer's subsequent findings were de novo. (Pet. Br. 7; R. 31.)

**Discussion**

Under unemployment compensation law, an individual is disqualified from receiving benefits if he was "discharged for misconduct connected with the individual's work."[2] 26 M.R.S.A. § 1193(2). Misconduct is defined by the statute as the "culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." *Id.* § 1043(23). Certain acts or omissions are "presumed to manifest a disregard for a material interest of the employer." *Id.* § 1043(23)(A). These include: "Refusal, knowing failure or recurring neglect to perform reasonable and proper duties assigned by the employer," *id.* § 1043(23)(A)(1), and "[i]nsubordination or refusal without good cause to follow reasonable and proper instructions from the employer," *id.* § 1043(23)(A)(9).

Disqualification from receiving unemployment benefits "must be established with reference to an objective standard." *Moore v. Me. Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978). Violation of a company rule does not automatically constitute "misconduct" for purposes of the statute. *Id.* Rather, the determination entails two inquiries based on objective reasonableness: "(1) [T]he employer must have a reasonable standard for discharge and (2) the employee must have acted unreasonably in failing to meet that standard . . . The employee's behavior is measured as the objective manifestation of intent." *Forbes-Lilley v. Me. Unemployment. Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994).

The Court does not doubt that Claimant was an outstanding employee for several years, but in this case, the Commission's decision adopting the Hearing Officer's findings was supported by competent evidence. The Hearing Officer considered a wide range of evidence including testimony and exhibits and found that Claimant had been asked on several occasions to conform to company standards, he was unwilling to do so, and he exhibited a hostile attitude on that topic towards management. (R. 15-16.) The Hearing Officer's conclusion that Claimant was terminated for misconduct was therefore

---

[2] A disqualification of this nature "continues until claimant has earned 8 times the claimant's weekly benefit amount in employment by an employer." *Id.* Thus, Claimant was found ineligible until he had earned $716 in employment. (R. 19.)

4

supported by competent evidence in the record and was not otherwise in error. The Court agrees that a consistent failure to comply with company standards is a reasonable basis for discharge, and Claimant acted unreasonably by intentionally failing to meet that standard.

According to Claimant's brief, Rick Michaud was dishonest at the January 17 hearing and misrepresented Claimant's history at Sam's. However, the Court is limited in its appellate capacity in that it may not engage in factfinding or substitute its judgment for that of the agency. As noted, "[i]nconsistent evidence will not render an agency decision unsupported," *Bischoff*, 661 A.2d at 170, and the Court is not permitted to reassess the credibility of the evidence, *see Ellery v. Dep't of Labor Unemployment Ins. Comm'n*, 1999 ME 194, ¶ 13, 742 A.2d 928. Given the testimonial and documentary evidence supporting the Commission's finding of misconduct, the Court cannot conclude that the evidence compels a contrary outcome despite the existence of countervailing evidence.

The entry is:

The Court AFFIRMS the decision of the Unemployment Insurance Commission.

_12·4·12_
DATE

_____
SUPERIOR COURT JUSTICE

5