STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-12-41

FRANK FOUNTAIN

Petitioner,

v.

ORDER ON RULE 80C
APPEAL

MAINE UNEMPLOYMENT
INSURANCE COMMISSION,

Respondent

This case is before the Court as a result of a Rule 80C appeal by Petitioner Frank

Fountain from Maine Unemployment Insurance Commission Decision no. 12-C-07100 denying

Petitioner's request for reconsideration of Decision no. 11-C-10483. In the latter decision the

Commission concluded the Petitioner was discharged for misconduct within the meaning of 26

M.R.S.A. §§ 1043(23) and 1193(2). Petitioner requests that this Court reverse, or in the

alternative, vacate and remand the Commission's decision finding that Petitioner's conduct

constituted misconduct per §§ 1043(23) and 1193(2). The Court finds that Petitioner's

termination was justified as his conduct constituted three "occurrences" within the meaning of

the governing absence policy, but that it did not amount to misconduct within the meaning of

Maine unemployment security law.

1

## STATEMENT OF FACTS

Starting on March 17, 2011, the Petitioner was employed by Adecco, a staffing agency, and was assigned to Poland Spring as a temporary production operator/forklift driver for his second season. (Administrative Record ("R") at 26, 34, 159-60, 166-67.) He typically worked seventy-two hours per week, and in his last week of employment, up to June 12, 2011, the Petitioner had worked eleven out of the past twelve days. (R. at 45.) On Sunday, June 12, the Petitioner put in for a six-hour overtime shift instead of the typical twelve-hour shift he typically worked in order to see his son play music in Portland. (R. at 45-46, 134, 136.) That Sunday was the Petitioner's last day of work for Adecco. (R. at 159.)

The Petitioner was scheduled to work from 6:00 a.m. to 6:00 p.m. on Monday, June 13, 2011; however, he did not arrive until five hours before the end of his scheduled shift. (R. at 46-47, 168.) The day before, after the Petitioner saw his son play music in Portland's Old Port, he drove home but was stopped on the way by police, arrested, and charged with operating under the influence. (R. at 46, 168.) The Petitioner was put in jail overnight even though he was scheduled to work Monday morning at 6:00 a.m. (R. at 46-47, 168-69.) The Petitioner's wallet was taken from him upon his arrest, and he did not have access to the employer's phone number in order to call and report that he would be late. (R. at 47, 168.) Instead, he called a number listed in the phone book; it was not the correct number to report as an employee, so he did not leave a message. (R. at 47, 168.)

Following his release from jail around 11:30 on Monday, the Petitioner drove directly to Poland Spring, arriving around 1:30 p.m. (R. at 47-48, 168.) Upon his arrival, the Petitioner spoke to a Poland Spring representative who told him to go home and call Adecco. (R. at 48,

2

163.) Adecco informed the Petitioner that Poland Spring no longer wanted him to work at its facility. (R. at 48.) When the Petitioner asked if Adecco had any other assignments for him he was told it did not. (R. at 48, 174.) The Petitioner asked Adecco to call if work became available, but he was never formally laid off or fired, and he did not leave work voluntarily. (R. at 109, 178.) In addition to his failure to notify and tardiness on Monday, June 13, 2011, the Petitioner was late to work by three minutes on June 5, 2011, which was noted as a single "occurrence" of an attendance issue in his file. (R. at 49, 90.)

Poland Spring has a "Temp Attendance Policy" that applied to the Petitioner, and per the policy, the Petitioner was charged with one "occurrence" for his late arrival to work, and one "occurrence" for failing to notify Poland Spring of his tardiness in advance. (R. at 32-34, 87, 120-121.) The Petitioner concedes that he signed and acknowledged that the attendance policy in place at Poland Spring applied to him, and that he understood the policy. (R. at 88, 121, 183.)

On July 31, 2012, the Commission found that the Petitioner was disqualified from unemployment compensation because he was discharged for misconduct in connection with his employment per 26 M.R.S.A. §§ 1043(23) and 1193(2). (R. at 12.) The Commission, citing *Moore v. Maine Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978), found that Adecco had met its burden of proving that the Petitioner's behavior amounted to misconduct because his tardiness on June 13, 2011 was an unreasonable violation of Poland Spring's reasonable attendance policy. (R. at 11.) The Commission focused upon the fact of the Petitioner's arrest and the offense for which he was arrested in its determination of misconduct.[1]

---

[1] The record is silent as to whether the Defendant was ever convicted of any offense or violation as a result of this arrest. The Court could not find any Maine case in which the Law Court addressed whether an employer is required to consider the constitutional guarantee of presumption of innocence in a case where employee misconduct is alleged in unemployment law.

3

## STANDARD OF REVIEW

The court must affirm agency decisions unless it finds an abuse of discretion, error of law, or findings unsupported by substantial evidence from the record.[2] *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013 (citation and quotation marks omitted). The petitioner bears the burden of proving that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995) (citation omitted). "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982) (citation omitted). Rather, the court will defer to administrative conclusions when based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted).

In doing so, the Court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal. v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223. Likewise, the Court must accept the agency's interpretation of its own internal rules and regulations "unless the rules or regulations plainly compel a contrary result." *Id.*

---

[2] The Superior Court may only reverse or modify an administrative decision if it is:
  (1) In violation of constitutional or statutory provisions;
  (2) In excess of the statutory authority of the agency;
  (3) Made upon unlawful procedure;
  (4) Affected by bias or error of law;
  (5) Unsupported by substantial evidence on the whole record; or
  (6) Arbitrary or capricious or characterized by abuse of discretion.
5 M.R.S.A. § 11007(4)(C).

4

## DISCUSSION

I.    *Poland Spring's Temp Absence Policy*

Poland Spring has in place a "Temp Attendance Policy" with which all employees are expected to comply. (R. at 87-88.) The policy defines an "absence" as: "[n]ot present at work for any reason other than funeral or jury duty. This is considered one occurrence." (R. at 87.) An "occurrence" is defined as: "[a]ny time you are absent or tardy." (R. at 87.) Being "tardy" means "[a]ny time you are not at your workstation at the scheduled shift time, you are considered tardy and will be charged one occurrence." (R. at 87.) The guidelines provide that within the first ninety days of employment with Poland Spring, a first occurrence results in a written warning, a second in a final written warning, and a third in termination. (R. at 87.) Additionally, employees are expected to "notify the company a minimum of one hour prior to their scheduled start time that they will be absent." (R. at 87.) *"Calling a minimum of one hour prior to the start of the scheduled work time results in one occurrence."* (R. at 87.) "Calling less than one hour prior to the start of a scheduled work time—but prior to the end of scheduled work time—will result in two (2) occurrences (one for absence, one for failure to notify)." (R. at 87.)

Both parties acknowledge that this absence policy controls, and the Court finds that the policy is unambiguous in terms of its application to the Petitioner. Per the policy, the Petitioner earned three occurrences, and accordingly, those three occurrences were adequate grounds for termination of employment from Poland Spring via Adecco. The policy clearly states that failure to notify results in one occurrence. Additionally, the policy also contemplates an instance wherein an absence and a failure to notify, even if stemming from a single event as it does here, results in two occurrences.

5

Mr. Fountain acquired the three "occurrences" necessary within his first ninety days of employment to merit termination. The question is not whether Poland Spring, and conversely Adecco, complied with the binding absence policy when it terminated him, but whether the Commission was correct when it found that Mr. Fountain was fired for misconduct. After reviewing applicable case law and the statutory language pertinent to this case, the Court finds that Mr. Fountain's attendance violations did not rise to the level of misconduct.

II.    *Misconduct*

In its decision, the Commission found that the Petitioner was discharged for misconduct connected with his work, as defined by 26 M.R.S.A. §§ 1043(23) and 1193(2) of Maine's Employment Security Law, and should accordingly be disqualified for benefits as provided by § 1193(2). Under the Employment Security Law, and per 26 M.R.S.A. § 1192, an unemployed individual is entitled to receive benefits subject to myriad eligibility requirements. § 1193 provides, however, that an individual may be disqualified from receiving benefits if they were discharged for misconduct. Section 1043(23) defines "misconduct" as:

> a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer. This definition relates only to an employee's entitlement to benefits and does not preclude an employer from discharging an employee for actions that are not included in this definition of misconduct. A finding that an employee has not engaged in misconduct for purposes of this chapter may not be used as evidence that the employer lacked justification for discharge."

> A. The following acts or omissions are presumed to manifest a disregard for a material interest of the employer. If a culpable breach or a pattern of irresponsible behavior is shown, these actions or omissions constitute "misconduct" as defined in this subsection. This does not preclude other acts or omissions from being considered to manifest a disregard for a material interest of the employer. The acts or omissions included in the presumption are the following:

> . . .

6

(2) Unreasonable violation of rules that are reasonably imposed and communicated and equitably enforced;

. . .

(4) Failure to exercise due care for punctuality or attendance after warnings . . . .

B. "Misconduct" may not be found solely on:

(1) An isolated error in judgment or a failure to perform satisfactorily when the employee has made a good faith effort to perform the duties assigned;

(2) Absenteeism caused by illness of the employee or an immediate family member if the employee made reasonable efforts to give notice of the absence and to comply with employer's notification rules and policies . . . .

26 M.R.S.A. § 1043(23).

"An employer bears the burden of proving that an employee's conduct meets the statutory definition of misconduct." *French v. Maine Unemployment Ins. Comm'n*, 2003 WL 21387165, at *2 (Me. Super. May 5, 2003). To determine the existence of misconduct, the Commission evaluates whether "(1) the employer [has] a reasonable standard for discharge and (2) the employee . . . acted unreasonably in failing to meet that standard." *Forbes-Lilley v. Maine Unemployment Ins. Comm'n*, 643 A.2d 377, 379 (Me. 1994). It is the application of the above-articulated test by the Commission that the Court now reviews.

The Court does not find that Poland Spring's absence policy is anything other than reasonable. While it is strict as far as what constitutes an "occurrence," there is nothing patently unreasonable about the policy. Indeed, it is not the absence policy itself that is under review, but whether the Petitioner's behavior was adequately construed as constituting misconduct under Maine law.

7

As for the second prong of the *Forbes-Lilley* test, the employee need not subjectively intend to disregard the employer's interests in order to commit a culpable breach. *See Sheink v. Maine Dep't of Manpower Affairs*, 423 A.2d 519, 522 (Me. 1980) (determining that "the Commission may not treat the fact that the employee has violated an employer's rule or the provision of a collective bargaining agreement as sufficient, without more, to establish statutory misconduct."). Instead, "[it] is sufficient if the [Hearing Officer] justifiably determines that the employee's conduct was of a type, degree or frequency that was so violative of employer interests that it may reasonably be deemed tantamount to an intentional disregard of those interests." *Id.* Acts of "insubordination or refusal without good cause to follow reasonable or proper instructions from the employer" are presumed to "manifest a disregard for a material interest of the employer." 26 M.R.S.A. § 1043(23)(A)(9); *Connolly*, 2004 WL 2153513, at *2 (Me. Super. Aug. 30, 2004).

Applicable case law dictates that the employer, in such a case, is required to show the unreasonableness, or culpability, of the Claimant's failure to meet the standards of the employer. *See Forbes-Lilley*, 643 A.2d at 379; *Moore v. Maine Dep't of Manpower Affairs*, 388 A.2d 516, 519 (Me. 1978) (holding that "disqualification from receiving the benefits of the unemployment act must be established with reference to an objective standard."). Further, when determining whether a disqualifying event due to misconduct has occurred, "conduct should be measured against a standard of reasonableness under all the circumstances." *Therrien v. Maine Unemployment Ins. Comm'n*, 370 A.2d 1385, 1389 (Me. 1977).

In *Thompson v. Maine Unemployment Ins. Comm'n*, the employee's conduct amounted to the commencement of verbal confrontations and threatening behavior, which, the Commission found, amounted to a "deliberate[] violat[ion] of the standards of behavior the employer has a

right to expect from his employees." 490 A.2d 219, 222 (Me. 1985). While the plaintiff in *Thompson* argued that any violation was "miniscule," the court disagreed because the incidents caused by the plaintiff's behavior resulted in the consumption of work time during working hours. *See id.* at 223. *Thompson* demonstrates that the threshold for finding unreasonable behavior on the part of the employee is fairly low—the material interests of the employer are generally treated with concern and deference. However, there is nothing in this record to support the Commission's conclusion that there was such a disruption -- other than what the Commission might have inferred from the existence of the policy itself. However, if the policy itself were enough, then anyone whose employment is terminated under it would be ineligible for unemployment, which is something that no one is arguing here. Indeed, the impact on the employer in this case would be the same as that created by an employee who decided not to show up for work for work because of a disruption in daycare, or because they simply forgot or lost track of a scheduled shift.[3]

In *Moore v. Maine Dep't of Manpower Affairs*, the conduct at issue was that the plaintiff talked too much. 388 A.2d 516, 518-19 (Me. 1978). Measuring the plaintiff's conduct against a standard of reasonableness compelled the Court to overturn the Commission because it found that the Commission failed to consider all the circumstances of the case. *See id. See also Ellery v. Dep't of Labor Unemployment Ins. Comm'n*, 1999 ME 194, ¶¶ 15-17, 742 A.2d 928 (finding that the employee's failure to participate in a program tailored to his individual needs was

---

[3] The Court was unable to find any Maine case where the Superior Court or Law Court used the fact of arrest and incarceration as the basis for a finding of misconduct, nor did the parties point one out to the Court. The Court could, however, envision a case where someone who fails to show up to work because they have been arrested and incarcerated for a crime could be considered to have committed "misconduct" within the meaning of Maine unemployment security law, depending on the offense as well as the kind of business run by the employer. While the Legislature has provided some clarity for determining what is and is not misconduct when employees are absent from work for certain reasons (such as when the employee has health issues), it has not addressed the circumstance presented here where the employee is absent from work due to having been arrested and incarcerated and essentially unable to contact the employer in a timely manner.

9

unreasonable because he intentionally disregarded the employer's interests by refusing to make an effort to perform the job he was hired to do); *Sheink*, 423 A.2d at 522 (concluding that plaintiff's disregard of a series of warnings regarding her decline in accuracy in her work performance, her choice to leave the work area without authorization, and her general discourtesy toward customers and co-workers amounted to unreasonable behavior supporting a finding of misconduct); *Therrien*, 370 A.2d at 1388-89 (holding that even though the plaintiff's refusal to comply with CBA provisions was in good faith, misconduct was properly found because an employee's subjective beliefs as to the reasonableness of his or her conduct is not a sufficient way to measure reasonableness under all the circumstances); *Connolly*, 2004 WL 2153513, at *4 (determining that an employee's blatant refusal to follow employer's instructions was without good cause, and such a finding was supported by adequate evidence in the record).

The above-referenced cases provide a sharp contrast with the circumstances of the instant matter. In *Thompson*, *Ellery*, *Sheink*, and *Connolly*, the employees engaged in conduct or omissions which displayed overt indifference to the interests of their employers. In addition, in all those cases, the conduct evidenced obvious adverse impacts on the employer's interests. The same cannot be said here. There is no suggestion in the record that the Petitioner actively sought to undermine the material interests of his employer. He was not habitually tardy or absent. On the one prior occasion he was tardy, it was by three minutes. His second absence—the one that resulted in his termination—was certainly more serious, but he attempted in good faith to inform the employer of his impending tardiness, even if he was not able to reach his employer on the phone as dictated by the absence policy.

The three "occurrences" here do not amount—under an objective metric—to misconduct. It appears that the Commission reached only the first prong of the requisite inquiry: finding that

the Poland Spring absence policy was reasonable per *Forbes-Lilley*. However, the plain language of the case law mandates that the Commission evaluate whether "(1) the employer [has] a reasonable standard for discharge **and** (2) the employee . . . acted unreasonably in failing to meet that standard." *Forbes-Lilley*, 643 A.2d at 379.

This "and" clearly directs the Commission to evaluate the reasonableness of the employee's conduct in light of all the attendant circumstances. Being three minutes late for a shift could not be said objectively to evidence *culpable* disregard for the employer's interest. Neither does the Petitioner's attempt to call (even though he did not have the correct number) in advance of his tardiness after his arrest, and his eventual but very tardy arrival at work. The Petitioner showed up to work six and a half hours late, and the Court does not disagree that under the terms of the controlling absence policy, Poland Spring had adequate grounds for firing the Petitioner. But where the question at hand is misconduct as currently defined in Maine law, the Court cannot find support in the record for the Commission's finding. The Petitioner was rightfully discharged, but not for misconduct, and is entitled to unemployment benefits.

**The entry will be: The Court reverses the Commission's Decision only as it relates to its finding of misconduct as defined in Maine unemployment security law.**

8/12/13

**DATE**

**SUPERIOR COURT JUSTICE**

11

| Date Filed | 10/05/12 | Kennebec County | Docket No. AP-12-41 | F |

Action: <u>Petition for Review</u>
       80C

**J. Murphy**

| Frank Fountain | vs. | Dept of Labor, Unemployment Ins. Cmsn. |

| Plaintiff's Attorney | Defendant's Attorney |

M. Thomas Trenholm, Esq.
84 Marginal Way, Suite 600
Portland, ME 04101-2480

Elizabeth Wyman, AAG
6 State House Station
Augusta, Maine 04333-0006

Date of Entry

| 10/10/12 | - Petition For Review Of Final Agency Action, filed 10/5/12. s/Trenholm, Esq.<br>- Application to Waive Payment of Filing Fee, Affidavit Of Petitioner, filed 10/5/12. |

10/22/12    Letter entering appearance, filed.s/Wyman, AAG

11/1/12    ORDER, Murphy, J.
Filing fee (if any) is waived.
Copy to Atty Trenholm

11/9/12    Administrative Record, filed. s/Wyman, AAG

11/15/12    Notice and Briefing Schedule issued:
Copies to attys. of record.

12/24/12    Consent Motion to Enlarge Time to File Petitioner's Brief, filed. s/Trenholm, Esq.
Proposed Order, filed.

12/28/12    ORDER, Murphy, J.
SO ORDERED.
Petitioner's brief is due 1/11/13. Respondent's brief is due 30 days after service of
Petitioner's brief. Petitioner's reply is due 14 days after service of Respondent's brief.
Copies to attys. of record.

1/11/13    Consent Motion to Enlarge Time to File Petitioner's Brief, filed. s/Trenholm, Esq.
Proposed Order, filed.

1/23/13    ORDER, Murphy, J.
So Ordered.
Petitioner's brief is due 2/8/13. Respondent's brief is due 30 days after service of
Petitioner's brief. Petitioner's reply is due 14 days after service of Respondent's brief.
Copies to attys. of record.

2/8/13    Brief of Petitioner, filed. s/Trenholm, Esq.

3/8/13    Brief Of Respondent Maine Unemployment Insurance Commission, filed. s/Wyman, AAG

5/24/13      Oral argument scheduled for 7/15/13 at 9:00.
             Copy of motion list and hearing notice mailed to Atty Trenholm and AAG Wyman.

7/18/13      Oral argument held 7/15/13.  J. Murphy presiding.
             Atty Trenholm and AAG Wyman for parties.
             Tape 1725, Index 3323-3855
             Under advisement.

8/13/13      ORDER ON RULE 80C APPEAL, Murphy, J.  (8/12/13)
             The Court reverses the Commission's Decision only as it relates to its finding of
             misconduct as defined in Maine unemployment security law.
             Copy to Atty Trenholm and AAG Wyman.
             Copy to repositories.

8/13/13      Notice of removal of Record mailed to AAG Wyman.